1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF CALIFORNIA

7

8

9

JOANN N. MARTINELLI, individually
and on behalf of all others similarly
situated,

No.  2:14-cv-02055 MCE-KJN

10

Plaintiff,

**ORDER**

11

v.

12

13

MARRONE BIO INNOVATIONS, INC.,
et al.,

14

Defendants.

15

16

PAUL SAUSMAN, individually and on
behalf of all others similarly situated,

No.  2:14-cv-02072 MCE-KJN

17

Plaintiff,

18

v.

19

MARRONE BIO INNOVATIONS, INC.,
et al.,

20

Defendants.

21

22

SSUCHIA CHEN, individually and on
behalf of all others similarly situated,

No.  2:14-cv-02105 MCE-KJN

23

Plaintiff,

24

v.

25

26

MARRONE BIO INNOVATIONS, INC.,
et al.,

27

Defendants.

28

1

| | |
|---|---|
| KENT OLDHAM, individually and on behalf of all others similarly situated, | No.  2:14-cv-02130 MCE-KJN |
| Plaintiff, | |
| v. | |
| MARRONE BIO INNOVATIONS, INC., et al., | |
| Defendants. | |
| SPECIAL SITUATIONS FUND III QP, L.P., AND SPECIAL SITUATIONS CAYMAN FUND, L.P., individually and on behalf of all others similarly situated, | No.  2:14-cv-02571 MCE-KJN |
| Plaintiffs, | |
| v. | |
| MARRONE BIO INNOVATIONS, INC., et al., | |
| Defendants. | |

Plaintiffs in these related class action cases charge Defendant Marrone Bio Innovations, Inc., ("Marrone Bio"), certain of its officers and directors, and its underwriters with violating the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Presently before the Court are three motions to consolidate these cases, to appoint lead plaintiffs, and to approve class counsel: (1) a motion filed by Special Situations Fund III QP, L.P., and Special Situations Cayman Fund, L.P. (collectively "Special Situations") (ECF No. 15);[1] (2) a motion filed by Metzler Investment GmbH and Stacey Gillis (collectively "Global Investors") (ECF No. 20); and (3) a motion brought by Edward L. Carter, Michael Criston, Jagpall S. Gill, Harpreet Singh, and Venkata Parimi

---

[1] All motions were filed in the docket for Case No. 2:14-cv-02055-MCE-KJN, but this motion was also filed as ECF No. 5 in the docket for related case, 2:14-cv-2571-MCE-KJN.

1  (collectively "Marrone Investor Group") (ECF No. 24).  For the reasons set forth below,

2  these cases are consolidated, the Special Situations Plaintiffs are appointed Lead

3  Plaintiffs, and their selection of Lead Counsel is approved.[2]

4

5  **BACKGROUND**[3]

6

7       Marrone Bio is a local biotech company providing bio-based, eco-friendly pest

8  management and health products.  After completing an initial public offering in August

9  2013, the company's stock was traded on the NASDAQ under the ticker symbol "MBII."

10  At the end of 2013, Marrone Bio filed its 10-K, reporting that its revenues had doubled

11  over the prior year.  The company continued to report strong results in the first quarter of

12  2014 and subsequently, in June 2014, it undertook a Secondary Offering of 4.575 million

13  shares of common stock at $9.50.  That offering was conducted pursuant to a

14  Registration Statement that was filed with the Securities and Exchange Commission

15  ("SEC") and declared effective on June 5, 2014.

16       Special Situations purchased 140,000 shares directly out of the Second Offering

17  and made purchases of 422,685 shares on the open market between June 6 and

18  September 2, 2014.  During the same relevant time period, Global Investors purchased

19  41,299 shares and the Marrone Investor Group purchased 22,100 shares of Marrone Bio

20  common stock.  Decl. of Shawn A. Williams, ECF No. 22, Exs. A, B; Decl. of Jon A.

21  Tostrud, ECF No. 26, Ex. D.

22       Subsequently, on September 3, 2014, Marrone Bio issued a press release, which

23  was also filed with the SEC.  That press release revealed that Marrone's Audit

24  Committee had discovered documents calling into question the recognition of certain

25  material revenue in the fourth quarter of 2013.  According to the Audit Committee,

26
27      [2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

28      [3] Unless otherwise indicated, the following facts are taken, at times verbatim, from Special Situations' Motion.  (ECF No. 15).

1  following that discovery, it conducted an internal investigation and determined that the

2  financials reported for 2013 and the first half of 2014 should not have been relied upon

3  by investors.  This revelation purportedly meant that the Registration Statement under

4  which shares had been sold was false.  Marrone Bio shares thereafter fell by at least

5  $2.85 per share.

6      As is relevant here, the Special Situations Plaintiffs suffered losses in excess of

7  $3 million as a result of this decrease in the value of Marrone Bio's stock.  Decl. of

8  Lawrence M. Rolnick, ECF No. 17-2, Ex. B.  The Global Investors estimate their losses

9  at just over $300,000, and the Marrone Investor Group lost approximately $85,000.

10  Williams Decl., Exs. A, B; Tostrud Decl., Ex. D.

11     Special Situations subsequently filed its Complaint in Case No. 2:14-cv-2571-

12  MCE-KJN, seeking to recover damages on behalf of both a class of purchasers who had

13  invested directly during the Secondary Offering and a class of purchasers who had

14  obtained the stock on the open market.  At approximately the same time, the four other

15  putative class actions pending before the Court, including those brought by the Global

16  Investors and the Marrone Investor Group, were also initiated.

17

18                              **ANALYSIS**

19

20     Each of the moving parties seeks to consolidate these actions, to be appointed as

21  lead plaintiffs, and to have their choice of lead counsel approved.  There is no dispute

22  that these cases should be consolidated.  Given the fact that the claims arise from the

23  same general set of facts and involve common questions of law, the Court agrees.

24  Accordingly, those requests are all GRANTED.  See Fed. R. Civ. P. 42(a) ("If actions

25  before the court involve a common question of law or fact, the court may . . . consolidate

26  the actions.").  There is also largely no dispute when it comes to the appointment of lead

27  plaintiff and lead counsel.  Those requests are nonetheless addressed in more detail

28  below.

1

**A.    Lead Plaintiff**

2      Under the PSLRA, district courts "select as lead plaintiff the one 'most capable of

3 adequately representing the interests of class members.'"  In re Cavanaugh, 306 F.3d

4 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  "While the words 'most

5 capable' seem to suggest that the district court will engage in a wide-ranging comparison

6 to determine which plaintiff is best suited to represent the class, the statute defines the

7 term much more narrowly: The 'most capable' plaintiff-- and hence the lead plaintiff-- is

8 the one who has the greatest financial stake in the outcome of the case, so long as he

9 meets the requirements of Rule 23."  Id.

10      This Court follows a "three-step process for identifying the lead plaintiff pursuant

11 to these criteria."  Id.  "The first step consists of publicizing the pendency of the action,

12 the claims made and the purported class period."  Id. (quoting 15 U.S.C.

13 § 78u-4(a)(3)(A)).  "In step two, the . . . [Court] must consider the losses allegedly

14 suffered by the various plaintiffs before selecting as the 'presumptively most adequate

15 plaintiff'-- and hence the presumptive lead plaintiff-- the one who 'has the largest

16 financial interest in the relief sought by the class' and 'otherwise satisfies the

17 requirements of Rule 23 . . . .'"  Id. at 729-30 (footnotes omitted) (quoting 15 U.S.C.

18 § 78u-4(a)(3)(B)(iii)(I)).  "In other words, the district court must compare the financial

19 stakes of the various plaintiffs and determine which one has the most to gain from the

20 lawsuit."  Id. at 730.

21      After that initial determination has been made, "[the court] must then focus its

22 attention on that plaintiff and determine, based on the information he has provided in his

23 pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in

24 particular those of 'typicality' and 'adequacy.'"  Id.  "If the plaintiff with the largest financial

25 stake in the controversy provides information that satisfies these requirements, he

26 becomes the presumptively most adequate plaintiff."  Id.  "The third step of the process

27 is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing

28 that it satisfies Rule 23's typicality and adequacy requirements."  Id. (quoting 15 U.S.C.

5

1   § 78u-4(a)(3)(B)(iii)(II)).   Special Situations meets all these requirements in the present

2   matter.

3       First, on September 8, 2014, Special Situations published notice in the <u>Business</u>

4   <u>Wire</u> apprising investors of the pendency of related case <u>Sausman v. Marrone Bio</u>

5   <u>Innovations, Inc.</u>, Case No. 2:14-cv-2072-MCE-KJN, and advised investors of their right

6   to seek status as Lead Plaintiff.  Rolnick Decl., Ex. D.[4]  All motions currently before the

7   Court were timely filed on November 4, 2014.  Accordingly, the first step has been

8   satisfied here.

9       Second, Special Situations offered evidence, and the other moving parties

10   concede, that, having lost over $3 million, they have the greatest stake in this action.

11   The Global Investors suffered the next largest loss amount, estimated at just over

12   $300,000, and the members of the Marrone Investor Group lost approximately $85,000.

13   As such, the Special Situations parties are presumptively the most adequate lead

14   plaintiffs.

15       Third, Special Situations offered ample evidence sufficient to meet the

16   requirements of Rule 23.  "Although Rule 23 contains four basic requirements

17   (numerosity, commonality, typicality, and adequacy of representation), a presumptive

18   lead plaintiff need only make a 'preliminary showing' of typicality and adequacy."  <u>In re</u>

19   <u>Surebeam Corp. Sec. Lit.</u>, 2004 WL 5159061, at *5 (S.D. Cal.) (internal citations

20   omitted).

21       The typicality requirement focuses on whether "the plaintiff's claim is aligned with

22   the claims of the remainder of the class."  <u>Id.</u> at *6.  "This factor mandates that the

23   presumptive lead plaintiff's claim arise from the same event or course of conduct giving

24   rise to the claims of other class members and be based on the same legal theory."  <u>Id.</u>

25   Here, Special Situations' claims arise from substantially the same conduct as the other

26   ///

27   _____

28       [4] There are no objections to this form of notice, which has previously been found adequate in other securities cases.  <u>See</u> <u>In re Surebeam Corp. Sec. Lit.</u>, 2004 WL 5159061, at *1 n.3 (S.D. Cal.).

1    class members' claims, and all of the legal theories are fundamentally the same.  Special

2    Situations have thus shown sufficient typicality.

3           Special Situations has likewise satisfied Rule 23's adequacy requirement.  "In

4    evaluating whether a class representative is adequate, courts assess whether [it] has

5    interests antagonistic to the class, and whether [its] counsel have the necessary

6    capabilities and qualifications."  Puente v. Chinacast Educ. Corp., 2012 WL 3731822, at

7    *5 (C.D. Cal.).  Special Situations' interest in pursuing this action is directly aligned with

8    the remaining class members, and given its much greater financial stake in the action,

9    Special Situations has a strong incentive to vigorously prosecute this litigation.  It has

10   affirmatively acknowledged and accepted the responsibility of proceeding as lead-

11   plaintiffs by submitting a Certification indicating, among other things, that "[Special

12   Situations] fully understand[s]  the duties and responsibilities  of a lead plaintiff under

13   the Private Securities Litigation Reform Act, including the selection and retention of

14   counsel  and overseeing  the prosecution  of the action for the classes."  Rolnick Decl.,

15   Ex. A.  Special Situations has extensive experience serving as lead plaintiff in other

16   actions, and they have selected as counsel a firm highly qualified and experienced in the

17   area of securities class action litigation.  Id., at Ex. E.

18          Finally, no party offers any evidence to rebut Special Situations' showing that it

19   meets the Rule 23 typicality and adequacy requirements.  Instead, both other groups of

20   moving Plaintiffs filed Statements of Non-Opposition to the granting of Special Situations'

21   Motion.[5]  See ECF No. 32, 34.  Accordingly, Special Situations' Motion to Proceed as

22   co-lead Plaintiffs is GRANTED, and the other competing Motions (ECF Nos. 20, 24) are

23   DENIED without prejudice.

24          **B.    Lead Counsel**

25          Special Situations' request for approval of its choice of Lowenstein Sandler to

26   serve as lead counsel is also approved.  "The most adequate plaintiff shall, subject to

27   ────────────────

28          [5] Defendants take no position as to which groups should be appointed lead plaintiff.  See ECF
     No. 35.

7

1    the approval of the court, select and retain counsel to represent the class." 15 U.S.C.

2    § 78u–4(a)(3)(B)(v).  "Although this power is subject to court approval and is therefore

3    not absolute, it plainly belongs to the lead plaintiff."  Cohen v. U.S. Dist. Court for the

4    Northern Dist. of Cal., 586 F.3d 703, 709 (9th Cir. 2009).

5         Special Situations' choice is sound.  As evidenced by the firm's resume,

6    Lowenstein Sandler is a leading national firm with over 100 litigation attorneys.  Rolnick

7    Decl., Ex. F.  The firm's lawyers  have extensive experience, and have developed

8    nationally recognized practices, in securities fraud litigation, class actions, derivative

9    litigation, antitrust, consumer fraud litigation, and white collar criminal defense.  Id.  Its

10   litigation department continues to receive top rankings from the Chambers USA guide,

11   and the firm is consistently the recipient of numerous other awards as well.  Id.

12   Moreover, Lowenstein Sandler has previously served as lead counsel or co-lead counsel

13   in several large, complex securities class action lawsuits.  Id. at ¶¶ 5-8.  Because

14   Lowenstein Sandler is without a doubt qualified to serve as Lead Counsel, Special

15   Situations' choice is APPROVED.

16

17                                    **CONCLUSION**

18

19        After review of the parties' Stipulated Motion to Consolidate Cases, the Court

20   makes the following orders:

21        1.    All Motions to Consolidate (ECF No. 15,[6] 20, and 24) are GRANTED;

22        2.    Special Situations' Motion for Appointment as Lead Plaintiff and for

23   Approval of Lead Counsel (ECF No. 15) in the above-captioned actions and all related

24   actions consolidated under this Order is GRANTED, and the Global Investors and

25   Marrone Investor Group motions (ECF Nos. 20, 24) are DENIED without prejudice;

26   ///

27   _____

28        [6] This Motion is also docketed as ECF No. 5 in Case No. 2:14-cv-2571-MCE-KJN and may be
     terminated there as well.

3.      Pursuant to Fed. R. Civ. P. 42, the actions denominated as <u>Martinelli v. Marrone Bio Innovations, Inc.</u>, No. 2:14-cv-02055-MCE-KJN, <u>Sausman v. Marrone Bio Innovations, Inc.</u>, No. 2:14-cv-02072-MCE-KJN, <u>Chen v. Marrone Bio Innovations, Inc.</u>, 2:14-cv-02105-MCE-KJN, <u>Oldham v. Marrone Bio Innovations, Inc.</u>, 2:14-cv-02130-MCE-KJN, and <u>Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.</u>, No. 2:14-cv-02571-MCE-KJN are consolidated;

2.      Case No. 2:14-cv-02571-MCE-KJN is designated as the "master file";

3.      The Clerk of the Court is directed to add all complaints and answers filed in Case Nos. 2:14-cv-02055-MCE-KJN, 2:14-cv-02072-MCE-KJN, 2:14-cv-02105-MCE-KJN, and 2:14-cv-02130-MCE-KJN to the master case;

4.      The Clerk of the Court is directed to administratively close Case Nos. 2:14-cv-02055-MCE-KJN, 2:14-cv-02072-MCE-KJN, 2:14-cv-02105-MCE-KJN, and 2:14-cv-02130-MCE-KJN;

5.      The parties are directed to file a Joint Status Report, with all parties participating, pursuant to the Order Requiring Joint Status Report in the master case; and

6.      The parties are directed to file all future pleadings, motions and other filings ONLY in case No. 2:14-cv-02571-MCE-KJN.

IT IS SO ORDERED.

Dated:  February 12, 2015

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

9